## North American Accident Insurance Company v. Caskey's Administrator.

(Decided February 4, 1927.)

Appeal from Warren Circuit Court.

1. Trial—Instruction Authorizing Recovery for Death Resulting from Bodily Injury Held Erroneous, Where Policy Covered Injury by Being Thrown from Horse-Drawn Vehicle.—In action on accident

policy, covering injury through external, violent, and accidental means, if insured should, by being accidentally thrown from private horse-drawn vehicle suffer loss of life, instruction authorizing recovery if he came to death as result of bodily injury through external, violent, and accidental causes, held erroneous, since it should limit recovery to character of accident mentioned in policy.

2. Evidence—In Action on Insurance Policy Covering Death from Injuries from Being Thrown from Horse-Drawn Vehicle, Insured's Wife's Testimony as to Accident Held Incompetent (Civil Code of Practice, Section 606, Subd. 2).—In action by insured's administrator on accident policy covering death from injury by being thrown from private horse-drawn vehicle, testimony of defendant's wife that he was thrown off wagon held incompetent, under Civil Code of Practice, section 606, subd. 2, prohibiting wife's testimony to any "transaction with, or any act done or omitted to be done" by, husband.

3. Witnesses—Son's Testimony as to Statements Made by Deceased Father Held Incompetent, in Action on Accident Policy Covering Latter's Life (Civil Code of Practice, Section 606, Subd. 2).—In action by insured's administrator on accident policy covering death from injury by being thrown from horse-drawn vehicle, testimony of insured's son concerning statements made to him by father held incompetent, under Civil Code of Practice, section 606, subd. 2.

4. Witnesses—Disinterested Witnesses Held Competent to Prove Decedent's Statements, in Action on Accident Insurance Policy (Civil Code of Practice, Section 606, Subd. 2).—In action on accident insurance policy for death of insured, witnesses not interested in estate of deceased were competent to prove statements made by him, unless such statements were incompetent as being self-serving declarations; Civil Code of Practice, section 606, subd. 2, being inapplicable.

5. Evidence—Nonexpert's Testimony that he Found Bruised Spot on Deceased's Body when Preparing Him for Burial Held Admissible.—Testimony of nonexpert witness, who assisted in preparing deceased's body for burial, that he found bruised spot on deceased's side, but found nothing else the matter with him, held admissible, in action on accident insurance policy, since he testified to physical fact.

6. Evidence—Nonexpert Witness Cannot Testify that he Thought Deceased did Not Have Pneumonia.—Nonexpert held not compe-tent to testify that he thought deceased did not have pneumonia, since existence of such disease could only be determined by exer-cise of judgment based on training and experience, requiring ex-pert witness.

7. Appeal and Error—After Objection to Testimony is Overruled, Admissibility of Similar Questions will be Reviewed Without Objection Being Taken.—After objection to testimony is overruled, admissibility of subsequent similar questions will be reviewed,

though they were not objected to, since one objection to particular lien of interrogation is sufficient.

8.  Evidence—Nonexpert May Testify as to Apparent Health of Another.—Nonexpert witnesses are competent to testify as to apparent health of another, since such testimony is confined to matters open to observation of witness.

RODES & HARLIN for appellant.

GEORGE H. GALLOWAY and W. O. RODES for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellant, whom we shall call the defendant, issued to J. F. Caskey a policy of accident insurance, and in this action by the administrator of Caskey, whom we shall call the plaintiff, a judgment for $1,000.00 was awarded against the defendant, to reverse which it prosecutes this appeal. In December, 1923, defendant issued this policy to Caskey and thereby insured his life in the sum of $1,000.00 against death resulting, directly and independently of all other causes, from bodily injury sustained through external, violent and accidental means, "if the insured shall . . . by being accidentally thrown from any private horse drawn vehicle . . . suffer loss of life." On April 15, 1924, Caskey was engaged in hauling logs or wood on his farm in Logan county, Kentucky, and it is claimed that he was then seated upon a load of logs driving the wagon, when one of the logs fell off, the horses started, Caskey was thrown from the wagon, and falling upon one of these logs, received an injury to his right side. Caskey was assisted to his home. On the third day after the injury he summoned a physician, went to bed and remained there until April 24, when he died. It is admitted that Caskey died of pneumonia, but there is a sharp issue as to whether that pneumonia was traumatic or the result of an influenza infection. Defendant is asking for reversal because of four alleged errors.

It first complains of the instructions, and its objection to the first instruction is well taken, for by its terms the jury was told to find for the plaintiff if it believed that Caskey came to his death as a result of any bodily injury received through external, violent and purely accidental causes. The defendant did not by this policy insure Caskey against every form of accident, and the in-

structions should have limited the recovery to that character of accident mentioned in the evidence, and insured against by the policy. To enable the plaintiff to recover, it was necessary that he should establish by evidence that J. F. Caskey while riding on this wagon was accidentally thrown therefrom and thereby received injuries from which, independently of all other causes, he died. Under the instructions given, the jury might have concluded because of the bruise that was shown to be in Caskey's side, that he had sustained an accidental injury and that that injury, independently of all other things, caused his death, and yet the jury might not believe that that injury was received in the manner insured against by the policy. For this reason, instruction 1 was erroneous.

It contends that the widow of Caskey, who was present at the time that it is claimed Caskey was thrown off of this wagon and who testified over the objection of the defendant to that effect, was not a competent witness. As the widow of the insured, Mrs. Caskey was interested in this recovery, and by subsection 2 of section 606 of the Civil Code, as construed by this court in the case of Combs v. Roark, 206 Ky. 454, 267 S. W. 210, she should not have been allowed to testify to any transaction with or any act done or omitted to be done by her husband. By this provision of the law, Mrs. Caskey is, because of her interest, made incompetent to testify for herself concerning any verbal statement of her husband, any transaction with him or any act done or omitted to be done by him. It is the evident purpose of the law to include within these terms every phase of human experience, and the courts in defining such statutes have always given to such words a very wide range; for example, see the definition of "transaction" given on page 2314 of 40 Cyc., and even that broad and comprehensive definition is exceeded by the definition which this court gave of that word in the case of Ky. Utilities Co. v. McCarty's Admr., 169 Ky. 38, 183 S. W. 237. It may be insisted that Mrs. Caskey was not testifying concerning a transaction with her husband, but she was testifying concerning an "act done" by her husband. She testified that he was riding on and fell of this wagon. She does not say he voluntarily fell off. On the contrary, she says he was thrown off the wagon, and thus his act in falling from the wagon was an involuntary act; but giving to these words "any act done" the same broad construction that we have given the word "transaction" we are compelled to hold that any act

done, whether voluntary or involuntary, comes within the terms of the statute. Moreover, this policy would not cover this injury unless it was received as the result of Caskey being accidentally thrown from this wagon, hence, in order to make out a case it was necessary to prove Caskey was riding on this wagon, which was a voluntary act done by him, and to establish which the evidence of Mrs. Caskey was improperly admitted. See Equitable Life Assur. Soc. v. Bailey, 203 Ky. 339, 262 S. W. 280; N. Y. L. Ins. Co. v. Johnson, 24 Ky. L. R. 1867, 72 S. W. 762. For the same reason, the testimony of Dock Caskey concerning statements made to him by his father is incompetent; but other witnesses not interested in this estate, hence not testifying for themselves, were competent to prove statements made by Caskey, unless these statements were themselves incompetent as being self-serving declarations.

The defendant's next complaint is that nonexperts were permitted to testify as to the cause of Caskey's death. Forsee, a witness, who assisted in preparing Caskey's body for burial, testified to finding a bruised spot on Caskey's side, and he was asked if he found anything else the matter with him. He said, "No." We do not regard this as seriously as the defendant does. Forsee was not attempting to testify as an expert. His answer amounts to saying he found no other wounds on Caskey's body. He was testifying to a physical fact, to what he saw, and the defendant's objection to that evidence was properly overruled. However, there was testimony introduced to which the defendant objected, and to which its objection should have been sustained. For instance, the witness Deal should not have been permitted to testify that he thought Caskey did not have pneumonia. In attempting to answer that question, Deal was testifying not to a physical fact, observed by him, but was testifying as an expert about the condition of Caskey's lungs, a physical fact, of course, but one which Deal could not see, and concerning which he had no expert knowledge that would qualify him without seeing to testify on the subject. The statement of Forsee was competent for he was testifying to what he could see, but Deal was attempting to testify about something he could not see, and about a fact, the existence or nonexistence of which could only be determined by the exercise of judgment based on training and experience and upon such facts and symptoms as he could see. In other words, Deal was attempting to

testify as an expert, and a nonexpert layman is not competent to testify under such circumstances. Sovereign Camp, W. O. W. v. Morris, 212 Ky. 201, 278 S. W. 554; Bardstown v. Nelson County, 121 Ky. 737, 90 S. W., 246; Connecticut Mut. Life Ins. Co. v. Moss, 6 Ky. L. R. 49; Elliott on Evidence, Vol. 2, p. 20, sec. 713; Baltimore & L. Turnpike Co. v. Cassell, 66 Md. 419, 7 Atl. 805; Lombard & S. S. Pass Ry. Co. v. Christian, 124 Pa. St. 114; Monroeville v. Weihl, 130 Ohio Cir. Ct. R. 689, 6 O. C. D. 188; Prieffer Stone Co. v. Shirley, 187 S. W. 930. It is true, the defendant did not object to this particular question, but it had previously objected to that line of interrogation, and having objected once, and its objection having been overruled it was not necessary for it to repeat the objection every time a similar question was asked. See L. & N. R. Co. v. Rowland's Admr. 215 Ky. 663, 286 S. W. 929.

Other witnesses were asked about the apparent health of Caskey, and the defendant has objected to that, but that objection is not well taken. It is generally held that laymen are competent to testify as to the apparent health of a person, such testimony being confined to matters open to observation of the party testifying, such as eyesight, hearing, nervousness and general health. Sovereign Camp. W. O. W. v. Morris, *supra;* Heddles v. Chicago Ry. Co., 77 Wis. 228, 42 N. W. 237; Robinson v. Exempt Fire Co., 103 Cal. 1, 36 Pac. 955; Atwood v. Atwood, 84 Conn. 169, 79 Atl. 59; I. C. R. Co. v. Rothschild, 134 Ill., 504; Berner v. Brotherhood of American Yeomen, 154 Ill. App. 27; Partello v. Missouri Pac. Ry. Co., 217 Mo. 645, 117 S. W. 1138.

The defendant's final contention is that the court should have directed the jury to return a verdict for it. The basis of this contention is that, when the evidence which we have held in this opinion to be incompetent, is excluded, there is nothing left upon which to base a verdict for the plaintiff; but as the evidence upon the next trial may be very different from the evidence on this trial, nothing we might say now would be of any assistance to the court then. Therefore, we do not now pass on this question. The judgment is reversed, and defendant is awarded a new trial to be held in conformity to this opinion.

The whole court sitting.