## Prudential Ins. Company of America v. Sisson.

Jan. 24, 1939.

WHEELER & SHELBOURNE for appellant.

HERSCHEL T. SMITH for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This case comes before us on the motion of the appellant, the Prudential Insurance Company of America, to be granted an appeal and for a reversal of the judgment entered in the Fulton circuit court September 30, 1937, on a verdict returned in favor of plaintiff, Georgia C. Sisson, in an action instituted by her father and next friend, Mack Sisson, for the sum of $437 with interest and costs.

The action was brought March 18, 1937, seeking recovery of $450, total and permanent disability benefits alleged owing her under the provisions of the policy issued her by appellant on August 11, 1930, in the amount of $500.

By her petition the insured alleged she was entitled to recover (a) $370.50 as disability benefits, due her under the provisions of the policy for 6¼ years of total disability, computed at the rate therein specified of $58.84 per year, or twenty-five quarterly payments of $17.71, with 6% interest thereon as each became due, and (b) the further sum of $79.50, paid as annual premiums of $12.72 throughout a period of 6¼ years, which she alleged were improperly demanded and collected, in breach of the disability provisions of the policy, contracting that payment of same was to be waived upon the insured's becoming permanently and totally disabled.

Further salient provisions of the policy here involved are in substance: (1) That the disability benefits would be granted by the company if the insured became totally and permanently disabled after the policy was issued; (2) that written notice of such disability should be given to the company at its home office; (3) that in such case the face amount of the policy would be paid her in forty quarter annual installments during a period

of ten years, at the rate of $29.42 per quarter on a $1,000 policy or in this instance at the rate of $14.71 on the $500 policy issued her; and (4) that these quarterly benefit payments should not begin until the insured's total and permanent disability had existed for one year, nor before a day more than one year prior to the date of receipt by the company at its home office of the required notice of the insured's disability.

The petition further alleged that in the month of December, 1930, next following the issuance of the policy sued on, the insured became totally and permanently disabled, which, as conditioned in the policy, had incapacitated her from engaging in any occupation for profit, and that such disability has since continued and would continue to the end of the life of insured; that written notice of the disability of the insured was given, as required, to the company in the latter part of December, 1930, or January, 1931, at its home office and to the company's local representative in Fulton, Kentucky, who at once, in turn, gave written notice thereof to his company at its home office; that the monthly premiums called for by the terms of the policy, each in the amount of $1.06, had been fully kept paid up from the date of the issuance of the policy (August 11, 1930) to the date not only of the insured's becoming totally disabled, but up to the time of the filing of this suit in March, 1937; that defendant company had breached the condition of its contract by failing and refusing to pay the total disability benefits, as they severally became due and payable, and in refusing to waive payment of the monthly premiums, as they became due under the policy (after notice given it, as provided, that insured had become disabled) for a period of 6¼ years, amounting to a total sum of $79.50 of such premiums it had wrongfully collected, which, together with the $370.50 alleged owing for disability benefits, amounted to $450, for the recovery of which amount plaintiff asked judgment.

Defendant answered, traversing the allegations of the petition and denying that the insured was entitled to recover anything, because, it alleged, insured's condition of total mental disability existed at the time of and prior to the date of her application for the policy and its issuance to her, which fact, under the express provision of the policy, rendered it of no effect and barred her right of recovery thereunder.

Plaintiff replied, setting out the "incontestability clause" of the policy, which expressly provided that it should become incontestable "after one year from its date of issue, except for non-payment of premium," etc., and further that since the date the policy was issued, August 11, 1930, each monthly premium had been duly demanded of her and paid the defendant, and that by reason thereof it was estopped from contesting its liability for the disability benefits owing and due insured under the policy, both because of the terms of the policy making it incontestable and also by its conduct, in having thus for years recognized and treated the policy as being in full force and effect.

By agreed order, the affirmative matter of the reply was controverted of record, when trial by jury followed, wherein, at the conclusion of the evidence, each of the parties offered and respectively moved the court's giving of a peremptory instruction, directing the jury to find in favor of each, which the court refused to give, and upon its own motion instructed the jury. Instructions Nos. 1 and 2 so given, and which are here criticised as erroneous, are as follows:

"No. 1. The court instructs the jury that if you believe from the evidence in this case that Georgia C. Sisson was in sound health on August 11, 1930, the day the policy sued on was issued and delivered to her, then the law is for the plaintiff and you will so find, and unless you so believe you will find for the defendant.

"No. 2. If you find for the plaintiff, you will fix the amount she is entitled to recover under the terms and provisions of the policy, beginning one year from the date she became totally and wholly disabled, and one year from the date the company was notified of her total disability, not to exceed however the sum of $450.00, the amount claimed in the petition."

Acting under these instructions and the evidence heard, the jury returned a verdict finding for plaintiff in the sum of $437, upon which judgment was accordingly entered, with interest from date and costs.

The appellant's motion and grounds for a new trial having been considered and overruled, with exceptions saved to the ruling, an appeal was prayed and granted

and is now here before us, asking our review of the lower court's proceedings and a reversal of its judgment.

However, appellant, recognizing that the judgment rendered was one for money, and less in its amount than $500, exclusive of interest and costs, has here moved for an appeal from this judgment, urging the following three grounds for its reversal: (1) That the court permitted the plaintiff to introduce improper evidence; (2) that the verdict was contrary to the great weight of the evidence; and (3) that the instructions given upon the court's own motion are entirely erroneous.

We will now consider the first of these objections, charging that the court admitted incompetent evidence.

This assigned error is directed at the court's having admitted the testimony of insured's non-expert witnesses, who were her parents, friends and daily associates and, as such, had continuous opportunity, during insured's two year period of residence in Fulton, Kentucky, occurring next before the policy was issued her, on August 11, 1930, for observing the insured's physical appearance, actions and behavior, as to facts so observed and their non-expert conclusions based thereon, as relevant and competent evidential facts bearing on the issue joined by the pleadings, as to whether or not she, prior to and at the time of the issuance of the policy to her, was then free from disability and her disability, for which benefit payments are asked, thereafter arose.

We are of the opinion that appellant's objection to the court's admission of this evidence is not well taken, in that the testimony of the lay witnesses, as to the patent facts observed by them, was not incompetent, but properly held admissible under the rule announced in North American Accident Insurance Company v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297, as follows [page 299]:

> "It is generally held that laymen are competent to testify as to the apparent health of a person; such testimony being confined to matters open to observation of the party testifying, such as eyesight, hearing, nervousness, and general health. Sovereign Camp, Woodmen of the World v. Morris [212 Ky. 201, 278 S. W. 554]; Heddles v. Chicago Rail-

way Company, 77 Wis. 228, 46 N. W. 115, 20 Am. St. Rep. 106.''

In the case of Equitable Life Assurance Society of the United States v. Davis, 265 Ky. 259, 96 S. W. (2d) 689, we held that lay witnesses may testify concerning apparent strength, vigor, and physical condition; again, in Equitable Life Assurance Society of the United States v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, we held that laymen may testify regarding presence or absence in another of symptoms indicating forms of disease so common as to be within knowledge of layman; and yet again we said in Equitable Life Assurance Society of United States v. Green, 259 Ky. 773, 83 S. W. (2d) 478, that a layman may testify as to the apparent physical condition of another, but his testimony should be confined to facts within his knowledge and not extended to matters of opinion. Such appears to be the now well-settled rule, as declared in the quoted cases and numerous others that might be cited.

Considering now the second of the objections urged, that the verdict is ''contrary to the great weight of the evidence,'' it is sufficient to say that there was ample and competent evidence introduced in support of the contentions advanced by each of the parties, which, although strikingly in conflict, yet substantially tended to support their respective positions in reference to the principal question in issue, as to whether or not the insured's total disability arose at a time before or after the issuance of the policy to her.

Clearly, such being the evidence introduced on behalf of the insured, the court properly refused the peremptory instruction moved for by defendant.

We will now consider appellant's third or final objection urged against the propriety of the judgment, which is that instruction No. 2 as given by the court is obviously improper and prejudicially erroneous.

The first of these instructions, though objected to, is not seriously criticised, in that it was appropriately directed to an issue of fact made under the first provision of the policy, as stated supra, and as to which the jury was instructed that if it believed from the evidence that the insured was in sound health on August 11, 1930, the day the policy sued on was issued, then in such case

the law was for plaintiff and it should so find, and conversely.

However, it is our conclusion that the second of these instructions, given by the court upon its own motion, was prejudicially erroneous and that appellant's criticism of it, as being defective, is meritorious, in that it failed to give or tell the jury the proper rate or measure of quarterly benefits the plantiff was entitled to under the policy provisions, if any, so that the jury might apply such rate measure given as a criterion to the evidence, in computing the amount to be awarded plaintiff for the period of her disability.

A statement of what was this legal measure of recovery or rate criterion, for the jury's guidance and aid in determining what amount, if any, had accrued and was owing the insured under the terms and provisions of the policy, was omitted from instruction No. 2 given by the court, though there was correctly stated therein the time from which the payments should be computed, and we conceive that it is properly subject to the criticism made for such omission; that it did not give the jury any guide to go by in estimating the amount of disability benefits that should be allowed the appellee, other than as relates to the period of time for which they may be computed; that it merely told the jury that if they should find for plaintiff, they would fix the amount she was entitled to recover under the provisions of the policy as beginning one year from the date of her disability and one year from the date the company was notified of it.

In the well-considered case of Louisville, H. & St. L. Railway Company v. Roberts, 144 Ky. 820, 139 S. W. 1073, the language of the opinion on this point is as follows [page 1074]:

"In all cases in which it is sought to recover damages, whether the action be in tort or in contract, the instructions should inform the jury what measure of damage, if any, the plaintiff is entitled to, so that the jury may apply this measure of damage to the evidence, and thus arrive at the sum that should be awarded. Or, to state it differently, certain principles of law have been established defining the measure of damages to which a person injured by a wrongful act or a breach of contract is entitled

to recover, and these principles of law are intended to and should be given to the jury in the form of instructions, so that, when the jury come to pass upon the amount to be awarded, they may look to the instructions, and see what the law allows the injured party to recover. If the jury is not thus advised as to the law of the case they have no rule or guide by which to compute or ascertain the sum that should be assessed, and may assess the damage at a much greater or smaller sum than the complainant is entitled under the law to recover.''

For like declarations of this well-established rule, see the cases of So. Railway in Kentucky v. Kentucky Grocery Company, 166 Ky. 94, 178 S. W. 1162; St. Marys Machine Company v. Cook, 187 Ky. 112, 218 S. W. 733; Chesapeake & O. Railway Company v. Caldwell, 213 Ky. 410, 281 S. W. 176.

It is especially obvious in this case that the appellant was prejudiced in its rights by this criticised instruction of the court, in that the jury· was thereby allowed to find for plaintiff, for disability benefits owing under the terms and provisions of the policy, an amount not in excess of $450, as claimed in the petition, notwithstanding the amount so claimed in the petition was itself unwarranted, in that, even conceding arguendo the truth of the allegations of the plaintiff's petition as to the date her alleged disability arose and written notice thereof was given the company, and that the latter was required by the policy provisions to thereupon waive insurance premiums and pay disability benefits in quarterly installments, it is yet apparent, due to the petitioner's error in stating the rate used in computing the amount she should recover of appellant at $450, that she claimed too much, in that such amount was reached when it was computed at the erroneous rate, as stated in her petition, of $17.70 per quarter, rather than the proper rate, expressly provided by the policy, of $14.71 per quarter.

It is further stated in the Roberts Case, supra, that while the law is that in civil actions the court is not obliged to instruct the jury upon the whole law of the case, unless requested to do so, yet, if the court undertakes upon its own motion, or upon request of either of the parties, to instruct the jury upon the law applicable to the issues, then the court should properly instruct the

jury upon each of such issues; and, if an erroneous instruction is given that prejudices the substantial rights of the complaining party, and proper exception is saved, it will be reversible error.

In the light of the clear pronouncement of this well-settled rule, here applicable for determining the propriety of this instruction, we are led to conclude that by reason of the instruction's not containing or laying down a proper measure or criterion by which the amount of the insured's recovery was to be computed and determined, it was prejudicial to the substantial rights of the complaining party, and proper exceptions having been here saved, that same constitutes a reversible error.

Therefore, we conclude that appellant's motion for an appeal should be sustained, the judgment reversed, and the cause remanded for further proceedings consistent with this opinion.